UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.1:20-cv-21429

KAREN SNYDER,
AND TODD SNYDER,

    Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
A LIBERIAN CORPORATION,

    Defendant.

_____/

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiffs, KAREN SNYDER and TODD SNYDER ("Plaintiffs"), by and through undersigned counsel, hereby sues Defendant, ROYAL CARIBBEAN CRUISES, LTD. ("RCCL"), a foreign corporation, and alleges:

**PARTIES AND JURISDICTION**

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. Plaintiffs are entitled to a jury trial pursuant to *Leslie v. Carnival Corp.*, 22 So. 3d 561,562 (Fla. 3d DCA 2008).

3. Plaintiffs are *sui juris* and are residents and citizens of the state of Florida.

4. Plaintiffs were lawful passengers aboard the cruise ship, the RCCL *Freedom of the Seas*, owned and operated by Defendant, RCCL.

5. RCCL is a Liberian company with its principal place of business and base of operations located in Miami, Florida.

6. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state.

7. This Court also has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves maritime torts. The type of incident and injuries suffered by Plaintiffs had the potential to impact maritime commerce as shore side excursions are a part of the cruise experience and sold by cruise lines aboard their cruise ships.

8. This action is being filed in this Court pursuant to the terms and conditions in the Passenger Contract Ticket issued by Defendant, RCCL.

9. This Court has personal jurisdiction over RCCL because:

    a.    RCCL's principal place of business is located within Miami-Dade County, Florida;

    b.    RCCL conducts substantial business within the State of Florida, including but not limited to operating cruises from Miami, Tampa, Cape Canaveral, Ft. Lauderdale, and Jacksonville, markets cruise vacations to Floridians, contracts with several Florida companies to provision its cruises ship while in Florida ports, and employs several thousand Floridians to work at its Miami headquarters; and/or

    c.    RCCL operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    d.    RCCL had an office or agency in this state and/or county; and/or

    e.    RCCL engaged in substantial activity within this state; and/or

  f.  RCCL committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193; and/or

  g.  At all times material thereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, the RCCL *Freedom of the Seas*.

10. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## GENERAL ALLEGATIONS

11. Defendant, RCCL, entered into an agreement with Adrenaline Tours, in which it agreed to market and sell the subject excursion, the Curacao "Speedboat Adventure and Snorkel" to its passengers and Adrenaline Tours, agreed to operate the subject excursion.

12. Defendant, RCCL, markets the subject excursion through its website, app, print material, onboard announcements, and onboard television programming.

13. Cruise passengers cannot purchase excursions, including the "Speedboat Adventure and Snorkel" excursion unless they have a reservation number from Defendant, RCCL, and are confirmed for their cruise. While aboard the ship, cruise passengers have three ways to book excursions: 1) visit the Excursion Desk; 2) fill out the order form in the guest's stateroom; and 3) use the interactive TV system available on most ships.

14. As the top reasons to book RCCL's excursions, Defendant, RCCL, states its guests are guaranteed priority departure in port, are provided flexible cancellation policies, are guaranteed return to ship and most importantly, the excursions are planned by insured partners who are supposed to adhere to the highest safety standards in the industry.

15. Plaintiffs booked a cruise aboard the RCCL *Freedom of the Seas* with Defendant, RCCL.

16. After booking Plaintiffs' cruise, Defendant, RCCL, offered Plaintiffs different excursions to purchase. One of those excursions was the subject excursion, the "Speedboat Adventure and Snorkel."

17. The fee for the excursion was charged to the Plaintiffs and collected from the Plaintiffs exclusively by Defendant, RCCL.

18. Based upon the advertising and the fact that she was purchasing it through Defendant, RCCL, Plaintiffs believed that the excursion was operated by Defendant, RCCL. Moreover, Plaintiffs trusted that being a RCCL excursion, it would adhere to the highest safety standards in the industry.

19. To all outward appearances, Defendant, RCCL, was the operator of the excursion, and any representations contained in any of the fine print of its literature never expressly advised Plaintiffs that it was not operating the excursion or advised Plaintiffs of the identity of the excursion operator to allow her to inquire about the operator's safety measures and standards.

20. Plaintiffs would not have participated in the subject excursion had they known the excursion was not operated by Defendant, RCCL.

21. Prior to their excursion, Plaintiffs informed RCCL that Plaintiff, KAREN SNYDER, was suffering from a pre-existing back injury.

22. At the excursion desk, after Plaintiff informed Defendant's agents of her pre-existing back injury, an agent of RCCL at the desk recommended the "Speedboat Adventure and Snorkel" excursion to Plaintiffs, and described it as a two-person boat that one of them would drive, and that they would be guided by a tour guide.

23. As a result of Defendant's agents' representations, Plaintiffs purchased the subject excursion.

24. The excursion pamphlet did not indicate that the "Speedboat Adventure and Snorkel" excursion would include high risk situations, and instead described the beautiful blue waters and snorkeling sites.

25. Plaintiffs were not warned in any other manner about the risk-creating and dangerous conditions of the subject excursion they would later encounter, and if such a warning had been given, Plaintiff would not have participated in the subject excursion.

26. Plaintiffs did not have access to the internet description of the excursion.

27. On or about, August 28, 2019, the RCCL *Freedom of the Seas* called on Curaçao.

28. Plaintiffs departed the ship for the RCCL sponsored excursion, the "Speedboat Adventure and Snorkel."

29. At the excursion location, Plaintiff listened attentively to the safety briefing and followed all directions carefully.

30. At no time during the safety briefing were tour participants warned about the dangers posed by the rough water conditions. If such a warning had been given, Plaintiffs would not have participated in the subject excursion.

31. At no time during the safety briefing were tour participants asked and/or screened for pre-existing medical conditions/injuries to ensure it was safe for them to participate in the subject shore excursion.  If the participants had been screened and/or asked about pre-existing medical conditions/injuries, the subject incident could have been avoided.

32. When Plaintiffs went to board a boat for the subject excursion, they were directed to board a group boat, and when Plaintiffs protested that they had been informed that they would have their own boat, they were told it was not possible for them to have their own boat.

33. After boarding the group boat, the driver of the subject boat, who was an employee, agent, or servant, of Adrenaline Tours, drove the boat unreasonably fast through waters that were unreasonably rough, and that had waves dangerously high despite Plaintiffs pleas to this driver to slow down and/or to operate the boat more safely.

34. As a result, after the subject boat hit a large wave, Plaintiffs were thrown up in the air and violently fell back into their seats, causing them to suffer severe injuries and/or aggravations as a result.

35. Following the incident, Plaintiff went to the medical center aboard Defendant's ship, the RCCL *Freedom of the Seas*, where Plaintiff was seen by the ship's medical staff, including its physician, who utilized an unreasonably poor quality x-ray machine and/or images, and who failed to diagnose Plaintiff's injuries.

36. Defendant, RCCL, caused Plaintiff's incidents for reasons that include, but are not limited to, failing to cancel the subject excursion despite knowing or having reason to know of the risk-creating and dangerous conditions of the waters on the date of Plaintiff's incident, as Defendant had cancelled other excursions scheduled for the same date due to such conditions.

37. Defendant, RCCL, manifested an apparent agency relationship with Adrenaline Tours, by marketing the excursion on its website and app using the RCCL logo; selling the excursion from its website and app and a desk aboard the ship; and recommending RCCL's excursions over others not sold through RCCL.

38. At all times material hereto, Defendant, RCCL, did not identify a third-party operator as the owner and operator of the shore excursion.

39. Defendant, RCCL, obtains payment for the excursions online and onboard the cruise through the guests' account.

40. At all times material hereto, Defendant, RCCL, participated in the income and losses generated by the operation of the subject excursion.

41. Defendant, RCCL, exercises or exercised control over the subject excursion in its requirements for its operation, insurance, and safety.

42. Defendant, RCCL, has or had control over the arrangement, marketing and sales of the subject excursion.

43. Adrenaline Tours, is or was an agent of RCCL, partners with RCCL and/or is a joint venturer with RCCL. Any representations of RCCL to the contrary do not control the legal status of the parties. Even if the excursion operator was an independent contractor, RCCL is not relieved of its duty to verify that its representations made in its literature and elsewhere about its excursion operators are true, that is, that the insured partners adhere to the highest safety standards in the industry.

44. All conditions precedent for filing and maintaining this action have been fulfilled, performed, waived, or do not apply.

## COUNT I
## NEGLIGENCE AGAINST DEFENDANT, RCCL

45. Plaintiffs re-allege all allegations pled in paragraphs 1 through 44 above as if alleged fully herein.

46. Defendant, RCCL, and/or its agents, servants, joint venturers, and/or employees owed Plaintiffs a duty to warn of dangers of which the carrier knew or reasonably should have known. This duty extends beyond the port to places where the passengers are invited to, or may reasonably be expected to, visit.

47. Defendant, RCCL advertised, marketed and sold the subject excursion to Plaintiffs and thus should have expected Plaintiffs to visit it and participate in it.

48. The dangerous and/or risk-creating conditions of the subject excursion include, but are not limited to:

   A. The use of poorly trained tour guides and excursion employees, agents, or servants;

   B. The inadequate supervision of passengers such as Plaintiffs, and boat driver(s), participating in the excursion;

   C. The inadequate supervision of passengers so as to prevent passengers suffering from previous injuries from being exposed to unnecessary risks such as those encountered during the excursion;

   D. The inadequate supervision of boat drivers so as to prevent inexperienced and/or otherwise incompetent boat drivers from participating in the excursion;

   E. The failure to equip its boats with adequate safety features, including, but not limited to, safety features such as adequate objects passengers could grab onto, adequate seating its passengers could use, and/or other adequate methods to help stabilize its passengers during ship movement, and adequate safety features that could reasonably sense and/or otherwise reasonably mitigate or avoid the danger of rough waters, high waves, Hurricane Dorian, and/or other dangers;

   F. The shore excursion employees, agents, or servants were not properly trained or experienced;

   G. There was no adequate warning given to passengers such as Plaintiffs of the dangers posed by inexperienced and/or otherwise incompetent boat drivers participating in the subject excursion;

H. The shore excursion employees were inattentive to the health and conditions of the passengers and to the danger and conditions of the subject boat, rough waters, high waves, Hurricane Dorian, and/or other dangers;

I. The driver of the subject boat, who was an employee, agent, or servant, of Adrenaline Tours, drove the boat unreasonably fast through waters that were unreasonably rough, and that had waves dangerously high, and when Hurricane Dorian was nearby, despite Plaintiffs telling this driver to slow down and/or to operate the boat more safely.

J. The shore excursion had prior incidents and/or reports of safety issues; and/or

K. Failure to monitor the excursion;

L. Failing to inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

M. Failing to inspect the subject boat prior to use by its passengers;

N. Failing to train crew members, excursion employees/agents, and/or other workers in the proper procedures for identifying any risk-creating condition regarding the subject boat, rough waters, high waves, Hurricane Dorian, and/or other dangers;

O. Failing to investigate the safety practices of the tour operator;

P. Failing to supervise the operations and safety procedures of the tour operator;

Q. Failing to remedy the dangerous and/or risk-creating condition within a reasonable amount of time which allowed the known hazard to persist and exposed passengers to unreasonable danger;

R. RCCL had a non-delegable duty to ensure passengers embarked and disembarked the vessel under reasonably safe circumstances;

S. The subject excursion workers were not adequately trained or competent to handle emergency situations such as Plaintiffs' incident;

T. The subject excursion operators did not have adequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

U. The subject excursion operators did not adequately assist and/or supervise passengers such as Plaintiffs while riding on the subject boat;

V. Failing to provide Plaintiffs the boat that RCCL had originally told Plaintiffs they would be able to use during the subject excursion; and/or

    W. The excursion employees, agents, or servants were not properly trained or experienced.

49. The dangerous conditions of the subject excursion were not open and obvious to Plaintiffs.

50. Defendant, RCCL:

    A. Had actual knowledge of the dangerous and/or risk-creating conditions in regards to the subject excursion:

        a) Upon information and belief, Defendant, RCCL, visited and participated in the subject excursion as part of its approval process for selecting the subject excursion to be offered to its passengers and thus knew or should have known of the dangerous, risk-creating, and/or defective conditions of the subject excursion;

        b) Received guest feedback of the tour in comment forms from previous participants/patrons/others within five years prior to Plaintiffs's incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion; *see* https://www.tripadvisor.com/AttractionProductReview-g147277-d11482938-Curacao_Speedboat_Beach_and_Snorkel_Adventure-Curacao.html#REVIEWS;

        c) Received complaints from previous passengers within five years prior to Plaintiffs' incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion; *see* https://www.tripadvisor.com/AttractionProductReview-g147277-d11482938-Curacao_Speedboat_Beach_and_Snorkel_Adventure-Curacao.html#REVIEWS;

        d) Was told by its passenger(s) that they suffered injuries during the subject excursion as a result of Adrenaline Tours' negligent operation of same, i.e. as a result of the dangerous, risk-creating, and/or defective conditions of the subject excursion;

        e) Hurricane Dorian was near where the excursion was taking place, and RCCL and Adrenaline Tours knew or should have known this;

        f) Plaintiffs advised that Ms. Karen Snyder was suffering from a pre-existing back injury, and thus RCCL either knew that the excursion was not suitable for someone in Plaintiffs' condition to attend and should have warned or advised

      them against attending it, or knew that it should have taken precautions to mitigate the risk of danger to them such as, for example, arranging to have Plaintiffs driven by more attentive boat drivers, arranging for Plaintiffs to drive a boat themselves, arranged for Plaintiffs to have had access to more suitable boats, and/or recommended more suitable excursions;

   g) When Plaintiffs noticed the waters were becoming rough, Plaintiffs told the boat driver to slow down and/or to operate the boat more safely, but the boat driver failed to do so;

   h) RCCL had canceled other excursions scheduled for the same date due to rough conditions such as those Plaintiffs encountered.

  B. Had constructive knowledge of the unreasonably dangerous and/or risk-creating conditions as they:

   a) Existed for a sufficient length of time so that RCCL should have known of them by the exercise of ordinary care when visiting the site to ensure it is safe for its passengers;

   b) Previous incident(s) such as Plaintiff's occurred, and or complaint(s) about the dangerous, risk-creating, and/or defective conditions of the subject excursion, which are outlined in Paragraph 45 of this complaint, were made, so as to impute notice upon RCCL;

   c) Created the dangerous and/or risk-creating conditions;

   d) Caused Plaintiff's injuries through an affirmative act(s), rather than solely through premises liability, for which notice is not required.

51.    Defendant, RCCL, breached its duty to warn Plaintiffs and was negligent by:

  A. Failing to provide adequate warnings of the dangerous, risk-creating, and/or defective conditions of the subject excursion;

  B. Failing to warn the Plaintiffs and other cruise ship passengers that Defendant, RCCL, does not inspect and/or maintain the subject excursion;

  C. Failing to advise the Plaintiffs and other cruise ship passengers that Defendant, RCCL, does not verify that the subject excursion was reasonably safe and/or inspected;

  D. Failure to reasonably monitor the excursion;

  E. Failing to reasonably inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

  F. Failing to investigate the safety practices of the tour operator; and/or

  G. Failing to supervise the operations and safety procedures of the tour operator.

52. As a direct and proximate result of the breach of the duty alleged above, Plaintiffs suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery, medical care and treatment and loss of earnings and loss of the ability to earn money. These losses are either permanent or continuing.

**WHEREFORE**, Plaintiffs, KAREN SNYDER and TODD SNYDER, demand judgment against Defendant, RCCL, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

**COUNT II**
**NEGLIGENT SELECTION AND RETENTION OF**
**<u>TOUR OPERATOR AGAINST DEFENDANT, RCCL</u>**

53. Plaintiffs re-allege all allegations pled in paragraphs 1 through 33 above as if alleged fully herein.

54. Defendant, RCCL, had the duty to exercise reasonable care to employ a competent and careful tour operator to perform the subject excursion;

55. Defendant, RCCL, breached its duty by:

  A. Failing to reasonably inquire into the credentials and qualifications of Adrenaline Tours;

B. Failing to periodically request Adrenaline Tours to provide RCCL safety inspection reports of the policies and procedures as to the dangerous, risk-creating, and/or defective conditions of the subject excursion, and its excursion tours generally;

C. Selecting a tour operator that failed to adequately supervise passengers and boat drivers;

D. Selecting a tour operator that failed to comply with RCCL's policies and procedures as to the dangerous, risk-creating, and/or defective conditions of the subject excursion;

E. Failing to institute safety inspection procedures to make sure that the dangerous and/or risk-creating conditions on the subject excursion were discovered and made safe;

F. Selecting a tour operator that failed to operate the subject excursion in a reasonably safe manner;

G. Selecting a tour operator that was inattentive of passengers' (including Plaintiffs') safety;

H. Selecting a tour operator that created and/or failed to adequately remedy the dangerous, risk-creating, and/or defective conditions of the subject excursion;

I. Selecting a tour operator that inadequately trained or hired competent workers that could adequately handle emergency situations such as Plaintiffs's incident;

J. Selecting a tour operator that had inadequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

K. Selecting a tour operator that responded in an inadequate time to address and/or treat persons injured on the subject excursion.

56. Defendant, RCCL, knew or reasonably should have known that the tour operator, Adrenaline Tours, was incompetent or unfit to conduct the subject excursion, as:

A. The inadequate supervision of passengers such as Plaintiffs, and boat drivers, riding the boats;

B. Adrenaline Tours hired, failed to adequately train, failed to adequately supervise, and/or failed to terminate the employment of its inexperienced and/or otherwise incompetent boat drivers;

C. The Adrenaline Tours employees, agents, or servants were not properly trained or experienced in properly identifying, addressing, and/or otherwise dealing with the risks and dangers associated with rough waters, high waves, hurricanes, and/or other dangers;

D. The Adrenaline Tours employees, agents, or servants were not properly trained or experienced in properly operating the boats used for the subject excursion;

E. The Adrenaline Tours employees, agents, or servants were not properly trained or experienced in instructing and warning tour participants regarding the risks and dangers associated with rough waters, high waves, hurricanes, and/or other dangers;

F. The shore excursion employees were inattentive as passengers rode in the boats;

G. The excursion operator had prior incidents, complaints, and/or other reports (through either third parties or through its own inspections/investigations of the subject excursion) of the dangerous, risk-creating, and/or defective conditions of the subject excursion; and/or

H. Defendant, RCCL, failed to monitor the subject excursion.

57. The dangerous conditions posed by the inexperienced and/or otherwise incompetent tour operator and its employees, agents, or servants were not open and obvious to Plaintiff.

58. As a direct and proximate result of the breach of the duty alleged above, Plaintiffs suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity

for the enjoyment of life, expense of hospitalization, surgery, medical care and treatment and loss of earnings and loss of the ability to earn money. These losses are either permanent or continuing.

**WHEREFORE**, Plaintiffs, KAREN SNYDER and TODD SNYDER, demand judgment against Defendant, RCCL, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical care and treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT III
## CLAIM FOR APPARENT AGENCY OR
## AGENCY BY ESTOPPEL CLAIM AGAINST DEFENDANT, RCCL

59. Plaintiffs re-allege all allegations pled in paragraphs 1 through 41 above as if alleged fully herein.

60. At all times material thereto, Defendant, RCCL, made manifestations that caused Plaintiffs to believe that Adrenaline Tours, had authority to act for the benefit of RCCL. These manifestations included:

- A. Defendant, RCCL, advertised a series of internet, brochure, and other media about the availability of the subject excursion;

- B. Defendant, RCCL, allowed its name to be utilized in connection with the advertising of Adrenaline Tours;

- C. Defendant, RCCL, made all arrangements for the subject excursion without effectively disclosing to Plaintiffs that the subject excursion was being run by another entity (and/or entities);

- D. Defendant, RCCL, represented on its website, app, and excursion brochure that excursions are planned by partners;

E.  Defendant, RCCL, marketed the subject excursion using its company logo on its website, app, and/or in its brochures and/or its ship without effectively disclosing to Plaintiffs that said excursion was being run by another entity (and/or entities);

F.  Defendant, RCCL, maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to Plaintiffs that said excursion was being run by another entity (and/or entities);

G.  Until the point that Plaintiffs actually participated in the subject excursion, the Plaintiffs' exclusive contacts concerning the subject excursion was with Defendant, RCCL;

H.  Defendant, RCCL, recommended to Plaintiffs to not engage in excursions, tours, activities that are not sold through RCCL as RCCL has no familiarity with other tours or their operations;

I.  Defendant, RCCL, assured Plaintiffs that its insured partners adhered to the highest safety standards in the industry;

J.  The fee for the excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by Defendant, RCCL;

K.  Plaintiffs receipts for the purchase of the subject excursion were issued exclusively by Defendant, RCCL; and/or

L.  Defendant, RCCL, integrated excursions into the cruise vacation experience.

61. Plaintiffs reasonably relied on the above, to their detriment, so as to believe that Adrenaline Tours's personnel were the employee(s) and/or agent(s) of RCCL in choosing the subject excursion.

62. It was reasonable to believe that Adrenaline Tours' personnel were RCCL's employee(s) and/or agent(s) because the Plaintiffs booked, paid for, and made all necessary arrangements for the subject excursion through Defendant, RCCL. Defendant, RCCL's, actions caused Plaintiffs to believe that Adrenaline Tours, had authority to act on Defendant, RCCL's behalf. At no time did Adrenaline Tours or RCCL, represent to Plaintiffs in particular or the other

cruise ship's passengers in a meaningful way that Adrenaline Tours personnel were not agents or employees of Defendant, RCCL.

63.     reasonable reliance was detrimental because she would not have booked, paid for, and/or participated in the subject excursion or incurred any injuries had Plaintiffs known the subject excursion was not operated by Defendant, RCCL.

64.     Therefore, Defendant, RCCL, is liable for the negligence of Adrenaline Tours, which was a direct and proximate cause of the Plaintiffs' injuries.

65.     As a result of Defendants' negligence, Plaintiffs suffered bodily injury(ies) and possibly aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of earnings.  These losses are either permanent or continuing.

**WHEREFORE**, Plaintiffs, KAREN SNYDER and TODD SNYDER, demand judgment against Defendant, RCCL, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical care and treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

**COUNT IV**
**CLAIM FOR JOINT VENTURE BETWEEN**
**DEFENDANTS, RCCL AND ADRENALINE TOURS**

66.     Plaintiffs re-allege all allegations pled in paragraphs 1 through 41 above as if alleged fully herein.

67.     At all times material thereto, RCCL and Adrenaline Tours, were engaged in a joint venture to provide excursions to passengers aboard RCCL's ship(s).

68. At all times material thereto, RCCL and Adrenaline Tours entered into an agreement where RCCL would sell the subject excursion to its passengers and Adrenaline Tours would operate said excursion.

69. As part of the joint venture, Defendant, RCCL, arranged for, sponsored, recommended, marketed, operated, sold, and/or collected money for the subject excursion and the money was then shared between RCCL and Adrenaline Tours. As its part of the joint venture, Adrenaline Tours, provided labor and/or operated the subject excursion.

70. Defendant, RCCL, on behalf of the joint venture, charged a fee to passengers who utilized the excursion(s). The fee was split between RCCL and Adrenaline Tours.

71. At all times material thereto, RCCL and Adrenaline Tours had joint and/or shared control over each aspect of the joint venture.

72. Adrenaline Tours had control over the day-to-day working of the excursion(s).

73. Defendant, RCCL, exercises control over the subject excursion by way of its requirements for its operation, insurance, and safety.

74. Defendant, RCCL, had control over the arrangements, marketing, and sales of the excursion.

75. At all times material thereto, RCCL and Adrenaline Tours shared a common purpose: to operate the subject excursion for a profit.

76. At all times material thereto, RCCL and Adrenaline Tours had a propriety and/or ownership interest in the subject excursion. RCCL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting

money for such an excursion, and Adrenaline Tours had a propriety interest in the time and labor expended in operating the subject excursion.

77. At all times material thereto, RCCL and Adrenaline Tours shared any losses sustained from the joint venture.

78. RCCL and Adrenaline Tours are jointly and severally responsible for each other's negligence.

79. At all times material thereto, RCCL and Adrenaline Tours:

   A. Had an intention to create a joint venture;

   B. Had a joint propriety interest in the subject manner of the venture;

   C. Had mutual control and/or joint control over the subject matter of the venture with respect to the provisions of the excursions to passengers aboard the ship;

   D. Had a right to share in the profits of the joint venture; and

   E. Would share losses that may have been sustained.

80. As joint venturers, RCCL and Adrenaline Tours are liable for each other's negligence. As a result, RCCL is liable for the negligent conduct of Adrenaline Tours.

81. As a result of the foregoing negligence, which was the direct and proximate cause of Plaintiffs' injuries, Plaintiffs suffered bodily injury and possibly aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of earnings. These losses are either permanent or continuing.

   **WHEREFORE**, Plaintiffs, KAREN SNYDER and TODD SNYDER, demand judgment against Defendant, RCCL, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental

anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical care and treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## DEMAND FOR JURY TRIAL

Plaintiffs, KAREN SNYDER and TODD SNYDER, hereby demand trial by jury on all issues so triable of right.

DATED this 2nd day of April, 2020

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 0115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiffs***